JOHN LEACH PORTER *vs.* THE POST PUBLISHING COMPANY.

PROVIDENCE — MAY 11, 1897.

PRESENT: Matteson, C. J., Stiness, J.

In a declaration in an action for libel which charged the publication of many alleged libellous matters, some of the innuendoes were found to be properly, and other innuendoes to be improperly, associated with the several parts of the publication. The statements complained of were contained in a single article, and were embraced in a single count of the declaration. The demurrer was to the whole count.

*Held*, that if any of the words were actionable the demurrer must be overruled.

ACTION OF TRESPASS ON THE CASE for libel. Heard on demurrer to the declaration.

MATTESON, C. J. Among the statements in the article complained of as libellous is the following: "As a matter of fact, however, action was taken which, if it had been insisted upon to the letter, would have compelled Mr. Porter to quit the parish much sooner than next Easter." The meaning attributed to this statement by the innuendo is that the vestrymen of Trinity Church were in possession of facts so damaging to the plaintiff's reputation, character and standing as a clergyman, and as rector of Trinity Church, that the vestrymen could have compelled the plaintiff to sever his connection with the parish and church forthwith. We think that this interpretation goes beyond the fair and natural import of the language, in that it assumes that the vestrymen were in possession of facts damaging to the plaintiff's reputation, and standing as a clergyman, as to which the statement is entirely silent. The assertion is only as to the action taken, which would have compelled the plaintiff to quit the parish at an earlier date than the next Easter. It does not purport to give a reason for the action.

We do not think that the reference in the article to the plaintiff's predecessor, Mr. Tucker, and his connection with the church, justify the innuendo that the plaintiff, as Mr. Tucker's successor, by his misconduct as rector, had caused the good name of the parish to become sullied, impure and degraded in the eyes of divers good and worthy people, since the statement makes no reference whatever to the plaintiff beyond the fact that he was the successor of Mr. Tucker.

We do not think that the statement in the article that "About two months ago Mr. Porter obtained the customary leave of absence, and went away for a four weeks vacation,— at least this appears to have been the general understanding of the case,—and he left the city on Monday, July 27th, and did not return until the 12th of the present month, a period of over six weeks. It may easily be imagined that this did not set well, in view of the feeling that was fast engendering

against him among the leading people of the parish, and the result was that before he had occupied his pulpit since his absence, the sentence of the vestrymen had already been pronounced against him," justifies the innuendo accompanying it that it was intended to imply, insinuate and charge, that during the absence of the plaintiff his habits of life and moral standing, as a clergyman and rector of Trinity Church, had been investigated and discussed by the vestrymen, and that the plaintiff had been found guilty of immoral, improper and unbecoming conduct while rector of Trinity Church, and had proved himself, by his misconduct and vicious habits, to be no longer worthy of the respect and esteem of the vestrymen or parishioners of Trinity Church. All that is asserted by the language is that the staying by the plaintiff beyond the period of the customary vacation, as it was generally understood, for a period of two weeks, had the effect to intensify the feeling which had fast been growing against him, and the result of that feeling. Nothing is implied, insinuated or charged as to the causes which led to the existence of the feeling and the sentence of the vestrymen upon the plaintiff, but merely the bare facts of the existence of the feeling and the action of the vestrymen. The allegations of the innuendo as to the causes of these facts, therefore, go beyond the statement in the article, and are not permissible.

We cannot say that the other portions of the article complained of may not bear the construction attributed to them by the several innuendoes, or that the article as a whole is not susceptible of the meaning put upon it by the general innuendo ; and if so, the language used of and concerning the plaintiff as a clergyman, and his relations to his parish, was clearly actionable. The statements complained of are all contained in a single article, and are all embraced in a single count in the declaration. The demurrer is to the whole count. The rule in such case is that if any of the words are actionable the demurrer must be overruled. *Edds* v. *Waters*, 4 Cranch C. C. 170 ; *Cummins* v. *Butler*, 3 Blackf. (Ind.) 190 ; *Wyant* v. *Smith*, 4 Blackf. 293. As in our opinion the article complained of, taken as a whole, and also some of the

charges contained in it, are capable of the construction put upon them by the plaintiff, and therefore actionable, if the jury should find them to have been used in the sense attributed to them, we think the demurrer must be overruled.

*Joseph Osfield, Jr. and Charles A. Wilson,* for plaintiff.

*Thomas P. Barnefield and Rathbone Gardner,* for defendant.