�export𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

STANDARD PAINT COMPANY V. E. K. VIETOR & COMPANY.

March 15, 1917.

1. DEMURRER—*Overruling Demurrer—Special Demurrer.*—By section 3272 of the Code, special demurrers are abolished in Virginia, and there is no error in overruling a demurrer to a declaration, where the assignment of grounds of demurrer pointed out no defect not cured by this section, which provides that on demurrer no defects in the pleadings shall be regarded unless something be omitted essential to the action or defense.

2. PLEADING—*Waiver of Defects—Amendments.*—After the plaintiff had rested and the defendant had introduced one witness, the court allowed the plaintiff to amend the declaration by setting out the precise dates upon which various contracts and sales had been made, and the point was raised that the declaration as amended misjoined causes of action. The action was trespass on the case in tort and it was claimed that the third count in the declaration was in contract. Even if the point had merit, inasmuch as defendant had failed to specify this ground in its original demurrer, and had pleaded not guilty, it had been waived.

3. WARRANTY—*Case.*—Case is the proper remedy for breach of warranty as to the sale of personal property.

4. DECLARATION—*Counts—Ex Contractu or Ex Delicto.*—The count in a declaration is treated as partaking of the nature of the action. So that if the action is *ex delicto,* the count will be intended as *ex delicto* also, unless there be something in its form and structure which plainly forbids such intendment. And it is not unusual for a declaration to contain allegations sufficient to support it, either in tort or in assumpsit.

5. ACTIONS—*Joiner of Causes.*—Wherever the causes of action are of the same nature and the same judgment is to be given in all, they may be joined in one declaration.

6. ACTIONS—*Joinder of Causes of Action.*—The first two counts in the declaration in an action for damages by the vendee of personal property against the vendor clearly and plainly in tort alleged deceit, guilty knowledge and fraud. The third count alleged a breach of warranty. Each of the three counts, however, alleged the warranty and its breach, and were plainly intended to include the same general cause of action, and though

the declaration was inartificially drawn it was so framed that. the defendant could not possibly have been deceived as to the subject of the controversy.

*Held:* That there was no misjoinder.

7. Warranty—*Election of Remedies.*—Where an action is based upon a breach of warranty, the purchaser may, if he chooses, waive the tort and sue upon the contract, or waive the contract and sue in tort.

8. Amendment—*Amendment During Trial.*—In an action for damages for fraud and breach of warranty in the sale of defective roofing, the dates of the several sales were each alleged in the declaration under a videlicet. The defendant knew the precise dates of each sale, and after one of its witnesses had supplied those dates the court permitted each count in the declaration to be amended by the insertion of the precise dates. Such amendments were not material, and if they were, were fully authorized by section 3384 of the Code, and the act of March 27, 1914 (Acts 1914, ch. 331, p. 641).

9. Amendments—*Liberal Construction of Statute.*—Code of 1904, section 3384, and act of March 27, 1914 (Acts 1914, ch. 331, p. 641), are remedial and must be liberally construed to advance the remedy and avoid the evils which they seek to cure.

10. Amendments—*New Cause of Action.*—In an action for damages by the vendee of personalty against the vendor involving several different sales, the court during trial allowed the declaration to be amended by the addition of the precise dates of each sale. It was objected that because the sales were made on different dates, each sale and warranty constituted a different and new cause of action. As, however, from the institution of the action, the cause of the controversy was clearly and distinctly understood by both parties, and the case made by the amendments was the same case referred to in the declaration, namely, the breach of the vendor's warranty, it was. held that there was no force in this objection. It would seem clear that it was the duty of the vendee to join all of his causes. of action in one declaration, but if not his duty, it was certainly his right.

11. Actions—*Joinder of Actions.*—A plaintiff may join all his causes of action in one declaration, if in separate suits he can recover on each in the same form of action, although the several causes of action are distinct rights of action so that a judgment in one will not bar a recovery for the other. This rule is, however, subject to the qualification that the causes of action must be in the same right.

12. Actions—*Joinder of Actions.*—Even where the torts are distinct and independent, if they are of the same nature and if the

same judgment may be given in each, they may, as a general rule, be joined.

13. BREACH OF WARRANTY—*Remedy.*—Either an action on the case sounding in tort or assumpsit will lie for a false warranty.

14. WARRANTY—*Scienter.*—Whether the declaration be in assumpsit or tort it need not aver a scienter. And if the averment be made it need not be proved.

15. APPEAL AND ERROR—*Instructions.*—Where instructions are contradictory and inconsistent, but the erroneous instructions were granted by the court at the instance of the party complaining of the instructions, he can not complain of that as error which could not possibly have injured his cause.

16. TRIAL—*Jury—Instructions.*—In an action for breach of warranty the jury, while considering their verdict, returned to the court room and asked whether or not they were limited in deciding the case of the typewritten guarantee introduced in evidence. The court replied that they were not; that they "must take into consideration the oral evidence, the letters and written guarantee, and to decide from all the evidence what the contract was and a breach of it, if any, and the damages, if any." The typewritten guarantee was only a part of the evidence, but a material part, to be interpreted in the light of the circumstances under which it was given, the letters contemporaneously and subsequently written, the construction put upon it by the parties themselves, and the pertinent oral evidence indicating a breach or lack of breach. As the court could not have made any complete reply to the question without fully reinstructing the jury upon all the questions involved in the case, the reply of the court was not harmful.

17. WARRANTY—*Implied Warranty.*—When one sells an article of personal property, there is an implied guarantee that it shall be reasonably serviceable and fit for the peculiar uses to which the vendor knows it is to be put.

18. WARRANTY—*Implied Warranty.*—The seller of roofing, knowing that the roofing was intended for buildings required to be water-tight, implied guarantees that such roofing is water-tight.

10. WARRANTY—*Construction.*—Where in the contract of sale of roofing the vendor undertook in case the roof should leak, that he would make repairs, a guaranty is necessarily implied that the roof would not leak.

20. PAROL EVIDENCE—*Warranty.*—Testimony which does not seek to vary or contradict a written guaranty, but which accords with it, showing the attending circumstances, the construction placed upon it by the parties and their subsequent conduct with reference thereto is admissible.

21. APPEAL AND ERROR—*Harmless Error.*—Since the act of March 27, 1914 (Acts 1914, ch. 331, p. 641), this court should extend the doctrine of harmless error to its logical conclusion, namely, that error is harmless which does not injuriously affect the interests of the party complaining, and that such injury is not presumed, but must affirmatively appear from the record; for that act in simple and unambiguous language directs the courts, at every stage of the proceeding, to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

22. APPEAL AND ERROR—*Harmless Error.*—In this court the doctrine of harmless error has been frequently announced and enforced in many cases where there has been a misdirection of the jury, a refusal to grant proper instructions, where evidence has been illegally admitted, and where there have been mistakes and errors in pleading.

Error to a judgment of the Circuit Court of the city of Richmond, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*O'Flaherty, Fulton & Byrd* and *Thos. B. Byrd,* for the plaintiff in error.

*Willis B. Smith,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The Standard Paint Company, manufacturer and dealer in a prepared and ready-to-lay roofing, designated by them as "Ruberoid," sold to E. K. Vietor, trading as E. K. Vietor & Co., during the years 1907, 1908 and 1909, a considerable quantity of their roofing to be put on the roofs of his tobacco warehouses and factories, part by the vendor and the residue under its direction. Previous to these contracts

Vietor had purchased Ruberoid roofing from a dealer in the city of Richmond and not directly from the manufacturer, and had applied it to one of his buildings. This roofing proved very unsatisfactory to him and upon his making complaint, the manufacturer claimed that the reason the roof complained of leaked was because the material, Ruberoid, had not been properly applied, and especially because the sheathing boards upon which the roof was laid had thereafter shrunk because green, that they were of varying widths and uneven. To correct this difficulty the plaintiff in error agreed, for the sum of $500, to supply and apply their water proof felt to this particular roofing, and claimed that this would remove all cause of complaint. About the same time Vietor bought 125 squares more Ruberoid roofing drectly from the Standard Paint Company, with the express understanding, however, that the material was to be applied by the vendor to the roof of another adjacent building of the vendee. In 1908 and in 1909 Vietor bought more Ruberoid roofing for his factory and warehouses, upon similar conditions—that is, that it was to be applied to the roofs by the vendor, or under the direction of its expert agents. The total cost of such roofing was $1,827. It was all sold upon assurances that, if properly applied, the roof would not leak, accompanied by a typewritten paper or guarantee reading thus:

"On payment of invoice, we hereby agree in case of leakage caused by any defect in the Ruberoid roofing or its application from ordinary careful use during the ten years ensuing from . . . . . . . . . . . . . (the date when the roof has been completed) to make the necessary repairs at our own expense immediately upon notice of said leakage being given to us.

"But this guarantee shall not be construed to cover damage by fire, tempest or other extraordinary means or causes, and is made with the distinct understanding that the entire

surface of the roofing is to be given one coat of our Ruberine paint within four (4) years after it is laid. Said coat to consist of one gallon of said Ruberine paint for not more than 200 square feet of surface."

During all this period numerous complaints from time to time were made of the insufficiency of the roofing, and from time to time the vendor sent experts to inspect it, and each time made repairs thereto and stopped leaks therein, until in 1912 it declined to make any further repairs, basing the refusal solely upon the claim that the defects then in the roof were caused by a hailstorm, and that it was not responsible for such damage. The vendee after ample notice to the vendor of his purpose, unless the leaks were stopped, to put a new roof on the building at vendor's expense, did so, at an expense of $2,100, and introduced evidence tending to prove damage to tobacco stored in the warehouses, caused by the leaks in the roofs. There are many other facts brought out in the testimony, and so far as they are material they will be hereafter referred to.

There was a verdict and judgment for $1,417.50 in favor of the vendee, and of that judgment the vendor is here complaining.

There are fourteen bills of exception, but in the petition they are reduced to six assignments of error, which we will consider.

1. There was a demurrer to the original declaration, which was overruled. It is only necessary to say as to this, that section 3272 of the Code makes it plain that this action is without error, because special demurrers have been abolished in Virginia by that statute, and the assignment of grounds of demurrer pointed out no defect not thereby cured.

After the plaintiff had rested and the defendant had introduced one witness, who had been examined in chief and cross-examined, the court allowed the plaintiff to amend

the declaration by setting out the precise dates upon which the various contracts and sales had been made, and the declaration having been thus amended the point was made that the declaration, as amended, misjoins causes of action.

The action is trespass on the case in tort, and the claim is made that the third count in the declaration is a count in contract and not in tort. The only amendment which was made in the declaration, as above indicated, was the addition of certain dates.

We are clearly of opinion that even if the point has merit, inasmuch as the vendor had failed to specify this ground in the original demurrer, and had pleaded not guilty, it had been waived. 31 Cyc. 731. This, of course, is sufficient to dispose of the point.

However, even if this ground had been specified in the demurrer to the original declaration, it should have been overruled. The third count in the declaration which is complained of alleges a breach of warranty, and in *Trice* v. *Cochran,* 8 Gratt. (49 Va.) 442, 56 Am. Dec. 151, this court determined that case is a proper remedy for breach of warranty as to the sale of personal property.

In *Ferrill* v. *Brewis' Admr.,* 25 Gratt. (66 Va.) 769, this court said: "Another rule of the courts is to treat the count as partaking of the nature of the action. So that if the action is *ex delicto,* the count will be intended as *ex delicto* also, unless there be something in its form and structure which plainly forbids such intendment. And it is not unusual for the declaration to contain allegations sufficient to support it, either in tort or in assumpsit. And this upon the ground that the same circumstances which show a breach of duty constituting a tortious neglect, show also a breach of promise implied from the consideration of the hire. *Gelston* v. *Burr,* 11 John. (N. Y.), 482.

"Wherever the causes of action are of the same nature and the same judgment is to be given in all, they may be joined in one declaration." 4 Min. Inst. (3d ed.) 1160.

The only difference between the third count in the declaration and the other two counts, so far as this question is concerned, is, that the first two counts are clearly and plainly in tort, alleging deceit, guilty knowledge and fraud. Each of the three counts, however, also alleges the warranty and its breach, and are plainly intended to include the same general cause of action, and though the declaration is inartificially drawn it is so framed that the defendant could not possibly have been deceived as to the subject of the controversy.

In *Harvey* v. *Skipwith*, 16 Gratt. (57 Va.) 403, an analogous question was thus disposed of by this court: "Each of the counts is a count in case for a tort. The second is confessedly so; and the statements and allegations in respect to the contract of hiring, contained in the first, do not impress upon that count a different character."

The gist of the counts in that case, as in this, is the same. Here the action is based upon a breach of warranty, and, while the complainant may, if he chooses, waive the tort and sue upon contract, he is equally at liberty, where there is a breach of warranty, to sue in tort; and this is what the vendee did in this case.

2. It is claimed that the court erred in permitting the plaintiff to amend the declaration during the progress of the trial.

The circumstances under which the amendment was allowed were, that during the trial the vendor's counsel complained of the erroneous statements in the declaration as to the dates of the various sales. It is not perceived that these were material allegations. The dates were each alleged under a videlicet, and it seems to us that the precise dates were immaterial, except as they might have been necessary to give the defendant notice. In this case the defendant knew the precise dates of each sale, and after one of its witnesses had supplied those dates the court permitted each

count in the declaration to be amended by the insertion of the precise dates which had just been proved by the vendor's witnesses. As above indicated, we do not think that these were material amendments, but if they were, they are fully authorized by the statute, section 3384 of the Code, which provides: .

"If at the trial of any action, there appears to be a variance between the evidence and allegations or recitals, the court, if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended, on such terms as to the payment of costs or postponement of the trial, or both, as it may deem reasonable. Or, instead of the pleadings being amended, the court may direct the jury to find the facts, and, after such finding, if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case." .

In addition to this there is the act approved March 27, 1914 (Acts 1914, ch. 331, p. 641), entitled: "An act to simplify and expedite the administration of justice in this State by the elimination of useless technicalities and vexatious delays and permitting amendments under certain conditions in causes hereafter instituted," which reads as follows:

"Be it enacted by the General Assembly of Virginia, That in any suit or action hereafter instituted, the court may at any time, in furtherance of justice, upon such terms as may be just, permit any proceeding or pleading to be amended, or material supplemental matter to be set forth in an amended or supplemental pleading. The court; at every stage of the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

604  STANDARD PAINT CO. *v.* E. K. VIETOR & CO., 120 VA. 595.

Opinion.

These statutes then authorized the action of the court, even if the amendments had been material.

It is claimed, however, that because the sales were made on different dates, and each sale and warranty constitute a different and new cause of action, that, to permit these amendments, added new, separate and distinct causes of action to each of the counts in the original declaration.

In *New River Mineral Co.* v. *Painter*, 100 Va. 507, 42 S. E. 300, the plaintiff was allowed to amend the declaration, which charged that a lawful act had been negligently done, by adding a count which alleged that the act itself was unlawful, and the rule is stated thus:

"Counsel have not cited, nor have we in our investigation found, any decision of this court which indicates what amendments of the declaration the court may allow after appearance; but there are many decisions upon the question in other jurisdiction. The rule generally prevailing seems to be that such amendments will be permitted as have for their object the trial and determination of the subject matter of the controversy upon which the action was originally based, but amendments will not be allowed which bring into the case a new and substantive cause of action different from that declared on, and different from that which the plaintiff intended to assert when he instituted his action. If the plaintiff in the amended declaration is attempting to assert rights and to enforce claims arising out of the same transaction, act, agreement or obligation, however great may be the difference in the form of liability as contained in the amended from that stated in the original declaration, it will not be regarded as for a new cause of action. In such cases, the original and amended declarations and the count or counts in each are regarded as variations in the form of liability to meet the possible scope and varying phases of the testimony, which is one of the very objects and purposes of adding several counts, and of mak-

ing amendments to a declaration. *Snyder* v. *Harper*, 24 W. Va. 206, 211; *Smith* v. *Palmer*, 6 Cush. (Mass.), 513, 519; *Yost* v. *Ely*, 23 Pa. 327, 331."

The amendment allowed here was strictly within the rule.

From the institution of this action, the cause of the controversy was clearly and distinctly understood by both parties to it. It was the subject of numerous interviews between them and of voluminous correspondence, and the case made by the amendments was the same case referred to in the declaration, namely, the breach of the vendor's warranty as to the roofing material referred to. It would seem clear that it was the duty of the vendee to join all of his causes of action in one declaration, but certainly, if it was not his duty, it was his right to do so.

In 23 Cyc. 395, this is said: "As a general rule it may be stated, that a plaintiff may join all his causes of action in one declaration, if in separate suits he can recover on each in the same form of action, although the several causes of action are distinct rights of action so that a judgment in one will not bar a recovery for the other. This rule is, however, subject to the qualification that the causes of action must be in the same right." This statement of the law is well supported by the authorities there cited.

In this case, if the vendee had vexed the vendor with several suits, he would have been the subject of criticism. Even where the torts are distinct and independent, if they are of the same nature and if the same judgment may be given in each, they may, as a general rule, be joined. 23 Cyc. 398; *Fisher* v. *Seaboard Air Line R. Co.*, 102 Va. 371, 46 S. E. 381, 1 Ann. Cas. 622. Here, the torts complained of grew out of a continuous course of dealing between the same parties with reference to one article of commerce, the roofing, and its application to the factory and warehouses of the vendee.

The statutes above quoted are remedial and must be liberally construed to advance the remedy and avoid the evils which they seek to cure. *McKee* v. *Bunting McNeal R. E. Co.,* 114 Va. 639, 77 S. E. 518; *Langhorne* v. *Richmond City R. Co.,* 91 Va. 367, 22 S. E. 357; *Norfolk & Western Ry. Co.* v. *Perdue,* 117 Va. 117, 83 S. E. 1058.

3. It is claimed that the jury was misdirected. This assignment is based upon the theory that because the first two counts of the declaration alleged a false and fraudulent warranty and that it was made with knowledge of such falsity, such allegation must be proved. The court gave to the jury certain instructions based upon that theory, it also gave them instructions based upon the theory that such guilty knowledge was not necessary in order to support a recovery.

In *Trice* v. *Cochran,* 8 Gratt. (49 Va.) 442, 56 Am. Dec. 151, this court expressly decided that it is not necessary to allege the defendant's knowledge, and that if alleged it is not necessary to prove it. And in *Schuchardt* v. *Allen,* 1 Wall. (68 U. S.) 360, 17 L. Ed. 645, this is stated: "The ancient remedy for a false warranty was an action on the case sounding in tort. *Stuart* v. *Wilkins* (1 Douglas 18); *Williamson* v. *Allison* (2 East, 447). The remedy by assumpsit is comparatively of modern introduction. In *Williamson* v. *Allison,* Lord Ellenborough said it had 'not prevailed generally above forty years.' In *Stuart* v. *Wilkins,* Lord Mansfield regarded it as a novelty, and hesitated to give it the sanction of his authority. It is now well settled, both in English and American jurisprudence, that either mode of procedure may be adopted. Whether the declaration be in assumpsit or tort it need not aver a *scienter.* And if the averment be made it need not be proved." *Gresham* v. *Postan,* 2 Carrington & Payne, 540; *Brown* v. *Edgington,* 2 Man. & Granger, 279; *Holman* v. *Dord,* 12 Barb. S. C. 336; *House* v. *Fort,* 4 Blackf. 293; *Trice* v. *Cochran, supra; Lassiter* v. *Ward,* 11 Ired. 443.

It is true that the instructions are contradictory and inconsistent, but inasmuch as the erroneous instructions are those which were granted by the court at the instance of plaintiff in error, it cannot now complain of that as error, which could not possibly have injured its cause. The danger was the injustice it might have done to the defendant in error.

Among the assignments is this: That the court erred in making a reply to the jury, who, while considering of their verdict, returned into the court room and asked the following question: "Whether or not they were limited in deciding this case to the typewritten guarantee introduced in evidence and marked Exhibit 2?" In reply to this the court said: "They are not, and must take into consideration the oral evidence, the letters and written guarantees and to decide from all the evidence what the contract was and a breach of it, if any, and the damages, if any."

If the case had depended entirely upon the typewritten guarantee, then this reply would have been harmful, but under the evidence in this case, if the court had told the jury that they were limited to the typewritten guarantee, that would certainly have been misleading. The typewritten guarantee was only one part of the evidence—a very material part, it is true; but it had to be interpreted in the light of the circumstances under which it was given, the letters contemporaneously and subsequently written, the construction put upon it by the parties themselves, and the pertinent oral evidence indicating a breach or lack of breach. So it is difficult to understand how the court could have made any complete reply to the question without fully reinstructing the jury upon all of the questions involved in the case. They had already been instructed in writing, and we must assume that the jury considered not only this reply which is complained of, but the other instructions which they had previously received.

608 STANDARD PAINT CO. *v.* E. K. VIETOR & CO., 120 VA. 595.

Opinion.

We find no reversible error in the instructions given.

4. The refusal of the court to grant three instructions asked for by the plaintiff in error is assigned as error. One of the instructions refused, No. 5, is based upon the claim that the written guarantee hereinbefore quoted should have been pleaded in those precise words in the declaration, and the liability thereby incurred always expressed in the precise words of that paper.

It is perfectly well settled that when one sells an article of personal property, there is an implied guarantee that it shall be reasonably serviceable and fit for the peculiar uses to which the vendor knows it is to be put (*Gerst* v. *Jones,* 32 Gratt. [73 Va.] 518, 34 Am. Rep. 773) ; and it seems clear that, notwithstanding the written paper, inasmuch as it is perfectly certain that the vendor knew that the roofing was intended for buildings required to be water-tight, it may be fairly inferred that there was this implied guarantee. It is not necessary, however, to rely upon the guarantee implied by law in such cases, for a fair construction of the paper referred to necessarily implies such a guarantee. The paper embodies not the specific words of the guarantee that the roof should be water-tight, but does specify the obligation of the vendor in case the roof should leak, and clearly defines its duty in such event. The very fact, however, that it makes definite promises and imposes certain specific duties upon the vendor in case the roof should leak, creates the necessary implication in the paper itself that the vendor guaranteed that the roof would not leak. The declaration is framed upon the theory that there was this guarantee that the roof would be water-tight, and a great deal of the controversy in this case grows out of the fact that the vendor appeared to claim that the roof was never so guaranteed. That both parties to the controversy understood that the roofing was sold upon a guarantee that if properly applied it would be water-tight, is

perfectly apparent from the contemporaneous letters and evidence on both sides. The court took the same view, and instruction 5 was rightly refused because the vendee's rights under the contract could not be limited in the way it was sought to limit them.

The other instructions refused were sufficiently covered by the instructions which were granted, ten in number, and they sufficiently protected every legal right of the vendor.

5. What has been said is sufficient to indicate our view as to the several motions to exclude all the correspondence between the parties, and indeed substantially all the evidence introduced in support of the vendee's claim. This testimony did not seek to vary or contradict the written guaranty. On the contrary, such evidence accorded with it, showed the attending circumstances, the construction placed upon it by the parties and their subsequent conduct with reference thereto. The motions were properly overruled.

6. It is claimed that the verdict is contrary to the law and the evidence.

It sufficiently appears that the vendee bought the roofing material for the purpose of roofing in a certain tobacco factory and appurtenent warehouses, which were required to be water-tight, and that the vendor knew all the surrounding circumstances and the necessities of the vendee, and had the roofing applied to the roofs under its own supervision and direction. The evidence is ample to show that the roofs gave a great deal of trouble and leaked after almost every rainfall, and that from time to time for nearly five years the vendor sent its agents to have the leaks stopped, and that finally it refused to pay any more attention to the vendee's claims and said that a part of the roof had been damaged by a hailstorm, and that for this damage it was not responsible. There is no sufficient explanation of why part only of the roofing was thus damaged and the evidence is conflicting on this point.

Since the act of March 27, 1914, *supra,* it is apparent that this court should extend the doctrine of harmless error to its logical conclusion, namely, that error is harmless which does not injuriously affect the interests of the party complaining, and that such injury is not presumed but must affirmatively appear from the record; for that act, in simple and unambiguous language directs the courts, at every stage of the proceeding, to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In this court the doctrine of harmless error has been frequently announced and enforced in many cases where there has been a misdirection of the jury, a refusal to grant proper instructions, where evidence has been illegally admitted, and where there have been mistakes and errors in pleading.

This case has been fairly tried upon a cause of action clearly indicated in the declaration, about the facts of which the defendant was as well informed as the plaintiff; they have submitted their controversy to a jury upon all the evidence which they themselves deemed pertinent; it appears that all of the substantial rights of the parties have been safeguarded; and we find no prejudicial error in the proceedings.

The judgment will, therefore, be affirmed.

*Affirmed.*