## Staunton.

### B. F. KENNEDY v. DALLAS MULLINS.

September 12, 1930.

Absent, Holt and Browning, JJ.

*George C. Sutherland,* for the plaintiff in error.

170

*Chase & McCoy* and *A. A. Skeen,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Dallas Mullins filed his notice of motion in the Circuit Court of Dickenson county, alleging that B. F. Kennedy made a parol agreement with him to form a partnership, the object of which was to secure from the Chemical Wood Corporation a contract to cut, log, haul and load on railway cars the standing timber on a certain tract of land owned by the said corporation; that pursuant to this agreement B. F. Kennedy went from Clintwood, Virginia, to Kingsport, Tennessee, for the purpose of making a contract with the Chemical Wood Corporation in the name of both Mullins and Kennedy, but after arriving in Kingsport, Kennedy made the contract in his own name and for his own benefit, and refused to permit Mullins to participate in the work or share in the profits.

To this notice a demurrer was filed and sustained. To the amended notice a second demurrer was filed, and overruled. The trial resulted in a verdict of $500.00 in favor of Mullins, and judgment was duly entered thereon.

For convenience, the parties will be referred to in the positions they occupied in the lower court.

The first error assigned is to the action of the trial court in overruling the demurrer.

The chief ground relied upon in the demurrer is that the notice fails to allege a consideration for the parol agreement. A concurrent consideration occurs in the case of mutual promises; such was the consideration relied on in this case, the promise of one was the consideration for the promise of the other. The promise of the plaintiff when he agreed to become the partner of the defendant was executed, but the thing which he promised to do was executory, namely, to participate in a contract with the

Chemical Wood Corporation and remove the timber from the land. There is no express allegation in the notice of an offer to perform the executory part of the agreement, but the notice alleges in specific terms that the defendant breached his contract in two particulars: (1) By obtaining the contract with the Chemical Wood Corporation in his own name, and (2) by denying to the plaintiff the right to participate in the removal of the timber. Thus by his own acts, he rendered impossible the performance of the agreement on the part of the plaintiff. Under such circumstances it is not necessary to allege an offer to perform.

The notice is not skilfully drawn, but it does allege a contract. If the defendant desired more detailed information he should have demanded a bill of particulars. In overruling the defendant's second demurrer, the court did not commit reversible error.

When the plaintiff announced that he had completed the introduction of his evidence, and before the defendant had introduced any testimony, he moved the court to exclude all of the plaintiff's evidence from the consideration of the jury, on the ground that there was a variance between the allegation and the proof.

The evidence for the plaintiff tends to prove that the plaintiff knew the Chemical Wood Corporation owned the standing timber on a tract of land in Dickenson county, known as the J. C. Willis tract; that in the latter part of 1927 he wrote to the Chemical Wood Corporation requesting them to give him a contract to cut the timber; that in reply the corporation stated they would not let the contract for the cutting alone, but they expected to have the cutting, logging, hauling and loading on railway cars all done under one contract.

With this information the plaintiff went to the defendant and proposed that he, the plaintiff, cut and log the timber and the defendant haul and load it on cars.

The following letter was then written, under date of January 6, 1928: "Gentlemen: We would like to see you at the earliest convenient date in regard to a contract on moving the timber from the Willis tract of land to Freemont, Va. We can come to Kingsport most any time that you can see us. We can handle the entire contract from stump f. o. b. cars at Freemont. Yours very truly. (Signed) "B. F. KENNEDY & DALLAS MULLINS."

As suggested in the above letter, a meeting was arranged between A. J. White and W. E. Garland, representing the corporation, and the plaintiff and the defendant. At this meeting the plaintiff and the defendant offered to remove the timber for $23.00 per thousand feet, stating to White and Garland that the plaintiff proposed to do the cutting and logging and the defendant the hauling and loading, and the compensation each was to receive therefor, the total being $23.00 or $22.75 per thousand. Mr. White, in behalf of the corporation, stated that this price was too high, that $8.00 per thousand for the cutting and logging and $8.00 per thousand for the hauling and loading was ample. No agreement was reached at this meeting.

On leaving the conference the plaintiff stated to the defendant that he was going back and accept Mr. White's offer of $8.00 per thousand for the cutting and skidding, to which the defendant replied: "We can get him up to $18.00." The plaintiff claims that he stated to the defendant that he would do the cutting and logging for $8.00 per thousand and the defendant agreed to do the hauling and loading for $9.00 per thousand, and they would divide equally any sum they could obtain over $17.00 per thousand.

The defendant wrote and signed a telegram and the plaintiff sent it, requesting an engagement with the representatives of the Chemical Wood Corporation in Kingsport,

Tennessee; an engagement was made and filled by Kennedy alone. At this meeting the defendant arranged to make a contract in his own name for the removal of the timber at $18.00 per thousand, and declined to permit the plaintiff to participate therein.

██ ██ The allegation in the notice of motion is that there was an agreement to "form a partnership." The above evidence fails to establish either a partnership or a joint adventure. It is true that the plaintiff used the term "partners," but when he was asked to explain what he meant by "partners," he said: "Well I asked him how he would like to go in partners with me, him take the trucking part of the job and me taking the cutting an dskidding, and he said that would suit him fine.

"Q. And that was the partnership?

"A. Yes, sir; we talked about it different times.

"Q. That is what he said, he would take the trucking and you the other?

"A. That was the understanding.

"Q. And that was what made you and him partners?

"A. Yes, sir; and we talked to Mr. White and he insisted we take it in the same contract."

His own evidence shows that the only thing the plaintiff ever agreed to become responsible for was the cutting and logging, or, as he termed it, the cutting and skidding. The above evidence establishes the fact that the parties were working together for separate and distinct parts of the proposed contract, each party assuming a different responsibility, the responsibility and benefit separate and distinct from the other. Because the plaintiff termed their relationship a partnership does not make it such. "If the terms of the contract existing between the parties do not constitute a partnership, none will be declared, even though the parties in words call the arrangement one." 20 R. C. L. 832.

■ The test as to whether or not the agreement of the parties constituted a partnership, certainly as between themselves, is governed largely by their intention.

"The particular test as to the existence of the partnership relation which is most widely accepted today and which is applicable especially as between the parties themselves irrespective of the rights of third persons is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual consent of the members. This intent may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction." 20 R. C. L. 831.

■ That the plaintiff did not intend to form a partnership, or consider any agreement binding on him, is further shown by the fact that after the conference with the representatives of the Chemical Wood Corporation at Clintwood he stated to the defendant that he was going back and accept the offer made him by Mr. White to take the cutting and logging at $8.00 per thousand.

The damage claimed in the notice of motion is the loss of profits for the entire undertaking; the proof is that the plaintiff was never entitled to any interest in such profits. The gist of the plaintiff's proof is that he was deceived by the defendant in that the defendant promised him to obtain from the Chemical Wood Corporation the job of cutting and logging the timber at the minimum sum of $8.00 per thousand, and more, if the corporation could be induced to pay a greater sum than $17.00 per thousand; and this the defendant failed to do. But no such statement of facts is alleged in the notice of motion.

■ The defendant in any action should be able to examine the declaration or the notice filed against him and be

informed by it what demands the plaintiff is asserting against him. The proof offered must support the case stated in the declaration or notice. *Bardach Iron & Steel Co.* v. *Tenenbaum*, 136 Va. 163, 118 S. E. 502; *Matthews* v. *La Prade*, 130 Va. 408, 107 S. E. 795; *Gardner* v. *Moore*, 122 Va. 10, 94 S. E. 162.

■ "It is elementary law that the proof must correspond with the allegations. But to avail himself of this rule a defendant is required to make timely objection." *Morris* v. *Peyton*, 148 Va. 812, at 816, 139 S. E. 500, 501.

The defendant's motion was timely made and, in the opinion of the writer, it should have been sustained by the trial court.

■ The plaintiff contends that because the defendant did not file an affidavit denying the existence of the partnership, then, under Code 1919, section 6127, the existence of such partnership is conclusive. The pertinent parts of this section are as follows: "Where plaintiffs or defendants sue or are sued as partners, and their names are set forth in the declaration, * * * it shall not be necessary to prove the fact of the partnership * * * unless with the pleading which puts the matter in issue, there be an affidavit denying such partnership * * *."

A denial of the partnership must be supported by an affidavit only when a partnership, as such, is a party to the litigation. Clearly, this requirement does not include a case where one party alleges an agreement to form a partnership and the other party denies any such agreement.

With perhaps one exception, all the instructions given in the instant case are based on the existence or non-existance of an agreement to form a partnership. From the conclusion the majority of the court has reached, it is useless to discuss the instructions or the errors assigned in the admission and rejection of evidence, as it is of opinion to affirm the judgment on the merits of the case.

The statement of this court in the case of *Norfolk & Western Ry. Co.* v. *Warden*, 117 Va. 801, 86 S. E. 103, 104, in the opinion of the writer, aptly applies to the instant case: "The plaintiff's situation in this court, with the motion to exclude sustained, is materially different from what it would have been upon a similar ruling in the lower court. There he might have asked and obtained, upon terms fair to the defendant, under section 3384 (6250) of the Code, leave to amend his declaration so as to conform to the proof. Here we can give him no such opportunity unless we send the case back.

"Without expressing any opinion as to the merits of this particular case, when viewed on the evidence appearing in the record, independent of the pleadings, we are unwilling to approve a rule of practice which would make it possible for a party having a meritorious case to fail irrevocably, without any chance to amend, merely because he has in the first instance imperfectly stated his case. The ends of justice are more adequately met by a rule which, on the one hand, will not permit a plaintiff to state one case and recover upon another, and, on the other hand, will afford a reasonable opportunity to amend the pleadings when a variance develops. This is in accord with the settled policy of our laws. *Langhorne* v. *Railway Co.*, 91 Va. 364, 366–7, 22 S. E. 357."

In my opinion (and Mr. Justice Epes concurs with me), the judgment complained of should be reversed and the cause remanded to be tried on different issues than those which were submitted to the jury. The majority of the court sitting (Prentis, C. J., Campbell and Gregory, J. J.) are, however, of the opinion that the judgment should be affirmed upon the merits of the case, and their reasons are thus expressed:

 Even though the plaintiff failed to prove the partnership which he alleged, he nevertheless sufficiently alleged

and proved a contract with the defendant under which he was to participate in the performance of the contract which the defendant made with the Chemical Wood Corporation, and he proved the violation by the defendant of his contract with the plaintiff.

 Code, 1919, section 6250, regulates the practice when there is a variance between the allegations and the proof. It reads:

"If, at the trial of any action or motion, there appears to be a variance between the evidence and allegations or recitals, the court, if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended, on such terms as to the payment of costs or postponement of the trial, or both, as it may deem reasonable. Or, instead of the pleadings being amended, the court may direct the jury to find the facts, and, after such finding, if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case."

It is manifest that the court is vested with discretion to dispose of such motions so as to avoid delay, end the litigation, promote substantial justice, and specifically, "if it consider the variance such as could not have prejudiced the opposite party, shall give judgment according to the right of the case." Therefore, even if it be true that the court erred in allowing the case to go to the jury without requiring the plaintiff to amend his notice of motion so as to conform more closely to the proof, this was an error of which the defendant should not be allowed to take advantage, if the entire record shows that the judgment accomplishes substantial justice according to the right of the case. This court should correct substantial errors, but should not be alert to reverse judgments for the correction of fanciful wrongs or for mere defects in procedure which do not injuriously affect the substantial rights of the parties.

■ Code 1919, section 6331, has been amended since the case of *Norfolk & Western Ry. Co.* v. *Warden,* 117 Va. 801, 86 S. E. 103, *supra,* was decided. The revisors' note on that amendment reads: "This section is, and is intended to be, a very substantial change in the statute of jeofails. It is intended to render it practically impossible for a case to be reversed on any mere technicality, and to allow all judgments to stand when fairly rendered on the merits, if substantial justice has been reached."

Even before this amendment to which the revisors referred, forbidding a reversal "where the parties have had a fair trial on the merits and substantial justice has been reached," it had long been held that the statute was designed to cure just such defects as exist in this case, namely, the defective statement of a good cause of action. *Roanoke Land & Imp. Co.* v. *Karn & Hickson,* 80 Va. 595; *Richmond* v. *McCormack,* 120 Va. 555, 91 S. E. 767.

Code 1919, section 6085, forbids the abatement of any action for want of form where the declaration "sets forth sufficient matter of substance for the court to proceed upon the merits of the case." Code 1919, section 6104, among other things, directs the court "at every stage of the proceeding" to "disregard any error or defect which does not affect the substantial rights of the parties."

■ These statutes are all based upon a sound public policy, and are supported by the unanswerable logic of the progressive exponents of the best legal thought, with which this court has been in full accord. *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752.

■ This oft-quoted language of Kelly, P., in *Virginia Ry. & Power Co.* v. *Smith,* 129 Va. 279, 105 S. E. 532, 535, is a cogent expression of the attitude of this court on the subject: "The revisors, in section 6331 of the Code of 1919, in keeping with the modern trend of legislative

and judicial policy, added a new clause to the old section (Code 1887, section 3449); and the statute now provides that 'no judgment or decree shall be reversed * * for any error committed on the trial where it plainly appears from the record and from the evidence given at the trial that the parties have had a fair trial on the merits, and substantial justice has been done.' It is our purpose to vitalize this provision in its application and administration. Of course, there will always be room for doubt as to whether the right result has been reached when the evidence has been in serious conflict; but in causes triable and tried by juries 'substantial justice' in a legal sense has been attained when litigants have had one fair trial on the merits; * *." *Bryant* v. *Fox's Admr.*, 135 Va. 296, 116 S. E. 459; *McNamara* v. *Rainey Corporation*, 139 Va. 211, 123 S. E. 515; *Northwestern Nat. Ins. Co.* v. *Cohen*, 138 Va. 177, 121 S. E. 507; *Virginia Ry. & P. Co.* v. *Taylor*, 144 Va. 506, 132 S. E. 334.

This being a motion under Code 1919, section 6046, only the essential rules of pleading should be applied. If the notice be such that the defendant cannot mistake the object of the motion, it is sufficient. *Board of Supervisors of Washington County* v. *Dunn*, 27 Gratt. (68 Va.) 608; *Union Central Life Ins. Co.* v. *Pollard*, 94 Va. 153, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715.

The plaintiff alleged and proved a contract with the defendant, its breach and the consequent loss imposed upon him. That he erroneously claimed that the agreement proved created a partnership was a conclusion of law, but this does not contradict the allegations of fact upon which he has been allowed to recover. The amount of the verdict, $500, indicates that the jury understood the case, and have only allowed him damages for the refusal of the defendant to allow him to participate in the performance of the contract—that is, to "cut and log" the timber. The

plaintiff's claim that he was entitled to share as a partner in the entire profits accruing to the defendant seems to have been denied.

To remand the case for amendment and retrial is to require another trial to test the merits of the same controversy over which the parties have already had their day in court and one fair trial on the merits.

The rule that the proofs must correspond with the allegation is fully recognized, but like every other rule should be reasonably applied. Its purpose is to prevent surprise. Where there is no surprise to the party invoking it, there is no good reason for enforcing the rule.

In this case, the defendant was not surprised. He knew that the plaintiff charged him with making a contract, in the performance of which the plaintiff was to participate, and that he was charged with its breach.

This court should never remand a case which it can properly decide (Constitution, section 90), and to end litigation is generally a boon to the litigants and always desirable in the public interest.

For these reasons the judgment will be affirmed.

*Affirmed.*

EPES and HUDGINS, JJ., did not concur in affirmance.